www.conveyoraccessories.com www.conveyoraccessories.com www.conveyoraccessories.com www.conveyoraccessories.com www.conveyoraccessories.com www.conveyoraccessories.com Electoral Door Closes Vice President of the United States Court of Appeals and for the Seventh Judicial Circuit Hear Ye, Hear Ye, Hear Ye Door Closes Good Morning Ladies and Gentlemen Our first case for this morning will be Flexible Steel Lacing Company against Conveyor Accessories 19-2035 Mr. Vincent May it please the court Joshua Vincent on behalf of the Lacing Company also referred to in the briefs as Flexco. It's the company's trade name. I brought some demonstratives with me On page 8 of our reply brief, there is a photograph of a McDonald's Happy Meal box and That particular picture really kind of crystallizes the difference between The function of an item or a design in the everyday sense of the word and the Functionality of a design in the as a term of art in trade dress infringement cases And so if you look at that picture on page 8, you'll see that the Happy Meal box Has handles that look just like the iconic golden arches that is McDonald's trademark Those handles serve a function. They allow you to carry the Happy Meal box But they are not functional because Any set of hey, they don't have to be Gold and they don't have to be in the same curved arch as the McDonald's arches They could be any shape. It could be a square handle. It could be a much more curved handle They don't have to look like the golden arches and that's why they're not functional It's not essential that they look like the golden arches in order for them to perform the function of carrying the Happy Meal box and so I bring that up because this little Center scallop on our metal fastener here. That's our Happy Meal box handle It serves a function in this case. It Reduces the volume of plate material on this fastener Let me just say I Understand what you're talking about, you know, we have the Bowdoin case as well. We've other cases but There's a great deal of evidence in this record that suggests that in the trademark sense of the term the shape of this scallop including If you will the smile part Was Functional it was part of the 308 patent your own Advertising materials tout, you know that it really makes the whole thing work better to do it that way Now for the McDonald's box, whether you have handles that are an arch That's a steep arch or a flat arch or that had its rectangular Doesn't change at all the your ability to carry the box, but here there's lots of evidence That this is something that affects to use the traffic's terms affects the cost or quality of the article well, I Respectfully disagree with that judge because and the proof of that is in CAI's product because CAI Has a trapezoidal notch in the same place not a curved Scallop in the center and test their president testified their fastener works just as good as ours And that's the point is but functional things that there isn't a set of one Way that something could be functional. I think your notion is that once The only way something could be functional is if it's the only way it can accomplish that task and that's not the law No, and I'm not suggesting that at all You know, there's a difference, you know, yeah, there can be different solutions to the same problem That's functional right and that's okay, but here we're only talking about one problem in one solution Okay and the problem is that you need a fastener with less surface material and A place for uncompressed rubber to flow when this pinches down on a rubber conveyor belt The solution to that problem is less surface area and a place for the rubber to flow it doesn't have to be a curved Scallop in the center to accomplish that and there's lots of examples of that If you look at page 11 of our brief, there's a Chinese fastener that has an elongated scallop down the center The shape doesn't make any difference at all It's simply a need to provide space on the surface on the flat surface of this fastener Where you can cut away the web of metal and create room for uncompressed rubber to flow So the shape is not essential. You're not disputing though that in your Advertisements you say that your type of scalloped edge Lower fastener profile extends belt splice life less effort required for installation reduces maintenance cost Those are all functional But that's different judge than saying if the reason it performs or works better is because of the shape The reason it works better is because there's less plate material There's less metal biting into the belt and there's a place for uncompressed rubber to flow. It could be any shape So yes, we certainly we took advantage of the fact that this is an attractive design. It is a scalloped edge That's exactly how we marketed it exactly you said you Held the scalloped edge as being the way these functional benefits, right? But but the reason it works better is not because of its shape as a scallop it's because that just happens to be the place where we chose to reduce the surface area of the fastener and Create the space for uncompressed rubber. Why didn't you say any of this to the patent and trademark office when you were looking for this? Trademark is as I recall you didn't even disclose the 308 patent to them initially initially We did not but we did on our own disclose that later on on your own or after one of the patent examiners Discovered it anyway. No. Well, there was a different patent examiner that it raised We brought it to the attention of the examiner who was dealing with the three to six Registration on our own for that very reason after the other examiner found it. Yes, that's correct But the point is we did address The question of this shape and whether it was or was not functional in the second declaration that mr Westboss admitted and it went and it explained very clearly that the shape of the center Scallop here the center center scallop was not did not have to be that shape to achieve Better bite in a lower profile because it's it's it's physics If you have less metal being embedded into the carcass of the of the rubber belt You're necessarily good. It's gonna be easier to put it on because you're displacing less rubber But at the same time you need some place for that compressed rubber to flow up into it can be anywhere And in fact, can I just say both of your trademark registrations the three two six and the eight four eight Describe quite a bit more than this one little bit of the surface of the scallop I mean a scallop doesn't up and down, you know, right? So the sine curve sort of well judge the the eight four eight talks about the entire Perimeter basically of the fastener as well as the wind right so nobody was focusing and that's functional the entire exterior Well as a unit, I suppose you could say that but the fact is this portion is independently non-functional But you didn't and that's a point that your cases make your cases make specialized seating talks about this the keen case for example Where you had the the stacking letter trays with the hexagon shape on the end of the stacking letter trays You still needed that configuration for the trace to stack but you could have a hexagon on it It wouldn't affect how it works this This scallop could be anywhere on this and in fact, there's examples in the record besides the Chinese one where you can see there's there's gaps In between these fastener where the rivets are if you scallop that side out You're still removing plate material creating a place for rubber to flow in the center here And you don't have to hit you could have a straight edge on top You could have a straight edge on top with an aperture below it It would create a hole which again would reduce the surface of the plate and allow rubber to flow there So it's not that's the point is that the scallop is not a set the scalp the shape No, I understand not essential to the use or purpose of this. Well, nor does it affect its quality? I don't know I mean you said it did have functional values and what what's tripping me up is what the Supreme Court said in Traffics that once functionality has been established once we've see that this Scallop does have a functional Role to play. There's no need to engage in speculation about other design possibilities Let's let's talk about that for one sec because I'm glad you raised that you know The court has come up with a formula for determining when there is strong evidence of functionality based on a utility patent And that formula looks at whether the patent discloses a central advance and that has to match Georgia Pacific other cases of yours that has to match the essential feature of the design Alright, this court has never really this court has never explained. What does the central advance mean? I mean, you're not it's not like you're engaging in patent claim construction in the any of these cases No one invited us to do that. No, I am not Congress asked us to defer to the Federal Circuit And so when we're talking about the central advance, this is a crit. This is an important case in the courts Jurisprudence here. Well, it is important because one of the things that concern the district court as well Was the fact that patents are given for a limited term of years these days 20 Might have been 17 at the time you had yours And trademarks are forever And so if your patent expires and you then find a way of functionally extending it for all eternity you really are not Yes, but my point judges from the standpoint of the courts jurisprudence It's critical that the court define what it means by a central advance Because if you look at the cases where that was found if you look at traffic's the dual spring design that was exactly what was trademarked if you look at a case like Georgia Pacific the lattice pattern is Specifically described in the patents all five patents said you have to use this particular Pattern in order to make the toilet paper bulkier and softer if you look at a case like Jay Franco the round beach towel Claim number two says you got to have a round towel if people are going to be able to get up and move around Or just move around without having to get up as the Sun changes direction Those were all right in the claims of the of the patent here There's no claim in this in the 308 patent whatsoever that says you have to scallop the edge To achieve a better bite and a lower profile. It does though have his item number 90 the beveled smile It's it's depicted in the patent. I don't deny that but the fact is that just because the patent Specification used the verb we scallop the edge To reduce plate material and provide a place for uncompressed rubber to flow And in this in with that smaller faster this little guy right here You know that was also done to make it fit on an installation tool So that's different this one doesn't need to have a scallop to fit on the installation tool Which is another reason why it's not functional. Well, there's no hang on a second The patent mentions it says with the scalloped edge 46 there is less plate material space from the rivet apertures 32 right and on and on So you have presented to the PTO this exact design as patentable Well from the state yes from the standpoint of reducing plate material and writing a place for rubber to flow But it doesn't say that it has to be this shape to perform that to perform that function It says it's going to be scalloped scalloping the leading edge improves the bite lowers the profile. That's true It does but so does scalloping the sides so does placing an aperture in the center There's any number of ways that you could remove the plate material and provide a space for uncompressed rubber and that to me I want to get back to this point of how critical it is to define What is what does it mean a central advance is it is it just the fact that somewhere in the Specification it uses the word scalp to describe how the plate was cut or does it have to be something in the claims? Like obviousness and novelty and utility as you would in the normal patent case. Yes I think it has to be you don't have a patent No, I mean, it's finished. I mean you had one. I agree, but we're talking about whether the What's disclosed in the 308 patent? matches The design element that's been trademarked and it has to be a match It has to be pretty much a perfect match under the case law that the claims the novelty of this particular Item in the patent has to match the trademark feature and in this case What's novel about the 308 patent this little guy? The novelty is it's called the two rivet fastener with teeth And if you read the patent all it really talks about with the scalloping is like almost an aside the point was they were trying and you'd read the abstract they tried to create a Smaller lighter weight medium duty fastener that would hold You know as strong as a bigger one makes it lighter less metal cost less. How did they do it? They put teeth on it. And that's that's why it's called the two rivet fastener with teeth That's the central advance of the 308 patent. The central advance of the patent is not that little scalp It's not that little scalp In fact, if you looked at the two of these you'd see the scallops aren't even the same Okay, but that's the point is when we're talking about this court's jurisprudence. You don't have a case that explains What is the central advance is it? Beveled leading-edge to the scalloped leading-edge. I'm sorry agree that if we thought going from straight to scalloped Yeah is the advance then the That part of the scallop is covered. I it's certainly I mean What are we gonna do like do it rivet by rivet? I it seems to me you have a strange approach to this well, no, it's not straight. I mean when you look at the other examples judge in the record of Fasteners that use different designs including the defendants fastener here that use different shapes In order to remove excess metal from the web of metal where these rivets go and create that space for uncompressed rubber It becomes just competition. They have theirs Designed you have yours, but you can't That's but we're not being that's precisely my point We're not preventing any competition because they can come up It says it's limited only by the creativity of the designer You can put these bevel or these these shapes geometric shapes Anywhere you want on the surface of the fastener and achieve the exact same purpose solve for the exact same problem So it's one problem. How do you reduce the metal to get it to bite better one solution? Okay, you you you reduce the plate material and provide a place for uncompressed rubber It doesn't have to be a scallop to do it. It can be any shape and that's why it's trademarkable and it's not a pet I guess before I sit down the thing I would point to the court to is the McCarroll AIDS case Okay, which was cited with approval by this court in the Arlington Specialties case and the McCarroll AIDS case You know if you compare that case to Georgia Pacific both involving Paper products and how they're fused together But in McCarroll AIDS both the process patent and the and the product patent Talked about how you fuse the material together and you need Spaces where it's bonded together and they described a pixel pattern Alright, but the point was the court found that those pixels could be any shape. They could be hexagons. They could be parallelepipeds They could be any shape you wanted They would still work to hold the fibers together and that's the exact same point that we're making here This case is really just like the care lights All right, thank you very much All right, mr. Smolenski Mr. Smolenski, I would have went with mr. Vincent, but the council already took that one Good morning, your honors and may it please the court. My name is Vincent Smolenski on behalf of the appellee conveyor accessories This court has never been presented with the type and volume of evidence Evidencing functionality that it has before here today Indeed the Seventh Circuit has repeatedly affirmed summary judgment finding functionality on far less evidence and This makes sense because as this court noted the threshold is so low for proving functionality That is often resolvable on summary judgment as a matter of law as the district court correctly noted There's a plethora of evidence that evidence demonstrates functionality. There's the so what's your answer to what I take to be? Mr. Vincent's primary point that Something I guess maybe I'll rephrase some things have so many solutions like the you know, the handle on a French press coffee pot, you know can be you know look like a figure eight or I suppose it could look like an arc or It could look squared or could look whatever That nobody cares what it looks like. So that's the kind of thing that might be a designator of origin, which is what a trademark fundamentally is and He's insisting that there are just so many ways you could accomplish the function of letting this rubber ooze out that the scallop isn't Something that we should consider trademark functionality Well with all due respect your honor That position has been rejected not only by the Supreme Court and traffics where it articulated that once a product feature is found functional under the input formulation the Commonly referred to as the traditional rule or the engineering driven rule of functionality There's an alternative designs cannot serve to prove a lack of functionality So would you define for me then what what definition of functionality you think this court ought to use? With respect to the three to six registration well for anything I mean, you know, this is a general question of trademark law. So something is functional if Like the Supreme Court laid that out in traffics where it said is essential to the use or purpose of the article or it affects The quality or cost of the article and what we have here. Is that a clear? Clear both admissions statements and legal documents such as the 308 patent 20 years of advertising promulgating the functional benefits of the leading beveled scalloped edge all of which point in the same direction They all established that the three to six registration is functional as a matter of law the fact that It matters little how many alternatives could be available that this court expressly rejected that argument in specialized seating So so in your view then under the Supreme Court's traffics definition It's functional if it's a wavy scallop pattern for the leading edge. We're not talking about the sides and the rest But it would be perhaps equally functional if it were Dental type, you know up and down square corners, but that wouldn't matter because The first one is functional effect. It affects the cost quality use of the product, correct? and if the evidence demonstrated that that alternative configuration was also was functional then yes, it would have been it would be functional assuming a I believe there's testimony that in this particular context of fastener actually can't have those 90-degree turns They have they have to be radius just given manufacturing tolerances and and whatnot, but Manufacturing considerations aside. Yes, if if it performs that utilitarian function It served it serves to affect the cost or quality of the article under the inward formulation Then it's functional traffic doesn't say alternative designs are never functional and CA hasn't taken that position but what it does say and what the Seventh Circuit has repeatedly echoed in Georgia Pacific versus Kimberly Clark in Specialized seating in Jay Franco is that once you get to once you have that strong evidence of functionality under the engineering's Kind of driven test alternative designs don't prove a lack of functionality the perfect example for example is the Georgia Pacific case pointed out by Opposing counsel there you had the diamond lattice pattern on Toilet paper and you had utility patents that disclosed the benefits you had advertising that touted the benefits the court then went on to say Even if the number of alternatives is numerous is the term that they use it lip matters little the alternative designs cannot make that particular Design any less functional it's still functional from a utilitarian standpoint and thus falls within the province of patents Trademarks as your honor noted can serve and protect a particular feature for an indefinite period of time Thus the court has to be wary about protecting and stifling innovation for functional features. That's the province of patents They so is it your view that once the patent expired? your client was free to Reverse engineer make as perfect a copy of the flexible steel product as one could imagine Once the patent expires our client was free to practice the claims And that once a and the patent law is clear on that the the term of a patent is is finite It's 20 years from the from the date of filing After that point in time it's dedicated to the public the public is free to practice that that particular invention And what's important to know you you're able to look at that and say gee, you know It makes sense to have a little loop down there the smile so to speak the beveled smile And so we're gonna do that, too. I Personally am NOT but I assume my client my client is is more than capable of doing so and what's important to know here is if if you really compare the cases that have Stated that alternative designs once once a particular feature is proven functional alternatives Designs can't prove a lack of functionality is is really comparing that to the cases that Opposing counsel pointed out the Bodom case the McGarrett's case and there the important distinguishing features There was absolutely no evidence in the record that actually demonstrated or pointed Towards a finding of functionality Bodom is perhaps a perfect example There were no utility patents just even disclosing the trade dress feature much less describing the functional functional benefits of that trade dress feature There were no advertisements that were promulgated that touted the functional superiority of that particular coffee press maker And in fact, there was an expert testimony from both sides basically the handle nobody was talking about the press part of it in Bodom Correct. You're a new French press coffee. That's what you're gonna do I believe the the plaintiff in that case that expressly disclaimed, right? That's right the pole and the plunge apart, but was it but what was that issue? With the trade That particular trade dress was the feet The handle and the dumb lid and what the court pointed out here is that there was no evidence There was no evidence in the record whatsoever that demonstrated functionality In fact, there was expert testimony that said this particular design was more costly to manufacture. It was particularly complex evidence that tended to weigh against functionality given that there was a complete absence of Utilitarian functionality or evidence demonstrating utilitarian functionality the court then also considered alternative designs to make sure There wasn't a competitive necessity for these particular configurations There wasn't by precluding competitors from using this type of handle or this dome lid. It wouldn't stifle competition artificially So what if what if we were focusing on the feet? You know, they have these fancy little feet on the the Bodom things and somebody else wanted to have just little spherical Dots, but either way the function that you're achieving is to keep it up off the table a little bit So the coffee pot's not sitting there just flat on the table That's a function right and so Why couldn't somebody copy the idea of feet? I think The case law actually expressly states that you can make a feat in the sense that you could you can copy and put a Functional foot what was that issue was those particular feet the ornate? Feet there. There was nothing in the evidence that demonstrated they performed any better than a standard foot Well, that's what mr. Vincent is insisting there's no evidence that this smile deals with the squeezing of the rubber any better than the Chinese design or Various other designs it might be out there With all due respect to your honor the evidence actually all points directly Contrary to that there is the declarations which wasn't really discussed on the in Council's opening, but I would like to talk about the three-way pen I believe the appellees brief with respect to the declarations is clear. There's an express admission by mr. Westfall repeatedly in multiple declarations that The three to six registration or at least the product configuration the central beveled scallop portion affects quality He goes on to explain factually how this affects quality it reduces wear and tear it It lowers the impact on cleaners. It extends the splice like the the those admissions are clear and flex goes Somewhat rhetorical question that of course, mr Westfall wouldn't have admitted his own functionality is based on the logical fallacy that he would never admit anything contrary to his own interests Which what the reality is he was under oath the examiner posited the question mirroring his exact terminology from his prior Declaration where he defined the trade dress as the leading beveled scalloped edge And the examiner posited half a dozen questions directly Directed directly towards that trade dress. These express admissions under the input test are akin to the plaintiffs Declaration in Arlington specialties where this court only considered the declaration from that plaintiff's founder and similarly found That those particular that particular feature in the trade dress of the I believe it was the dop kits for men's Was also functional but turning to the 308 patent the 308 patent is actually clear in its strong evidence of functionality in this case Indeed as this court is noted utility patent service excellent cheat sheets and the 308 patent search is that there were two points that I'd like to address from mr. Vincent's Argument that I think Warren weren't a discussion. The first is that the 308 patent The central advancer of the 308 patent is not in fact what is trade dress? Or I think tied into that as well as the fact that the 308 patent allegedly doesn't claim the three to six trade dress First of all, that's factually inaccurate and also it's legally irrelevant On the on the factual side as judge Castillo pointed out at the district court claim three does in fact Claim the contoured outer edge that wraps around Pull up. I believe it's in column 12 of the 308 patent It claims an outer edge of at least one of the lower and upper plate is Contoured to generally follow the contour around the apertures as judge Castillo pointed out That's expressly claiming the scalloped edge if we turn to column 10 and certainly claim 3 does not expressly use the term scallop But if we turn to the specification specifically in column 10 Beginning in line 31 you see that the lower plate 26 of the fastener herein is provided with a scalloped or contoured outboard edge 46 the specification uses the term scalloped or contoured synonymously It uses it interchangeably and what we have here is an express claiming of the of that scalloped edge And of course you can't get a patent unless it is useful and functional etc You don't get patents for things. Of course, your honor and the What we have here in the 308 patent I think it's important to point out and I think it serves as a Distinction between the cases such as Bowdoin or McGarry's is this is not a passing reference to a scalloped edge is somehow achieving this reduced Functional benefit. Well, this is a separate design Correct there's a 749 design patent. What what role does that play the 749 patent serves? The the 749 patent your honor serves very little Relevance but from from an initial standpoint, it lacks the requisite identity that's required between a design patent and a Claim trade dress in order for it to serve as evidence of non-functionality, but more importantly the 749 patent doesn't Somehow negate the express teachings of the 308 patent role doesn't play though. It's it's there Certainly and it's an appendix here. I mean it just doesn't do anything Put it on anyway, no, I you know, the three the 749 patent was presented in opposition I actually believe it was presented as evidence of non-functionality of the of the three two six or the trade dress But what what it actually demonstrates and it certainly may show that this later developed fastener Turned down the edges of the shoulders in order to improve the bite But the 308 patent Again, this this 749 patent doesn't negate the teaching of the 308 patent which expressly states It was known in the art to bevel or coin that front leading edge It was also known that there was a problem with it that coined edges and that it needed to sink better So it removed that material and created a scallop There was only one embodiment that the 308 patent discloses and it and that embodiment is that scallop contoured edge 46 it is This is not a situation even much like Georgia Pacific where it was noted There were numerous alternative designs of that were disclosed in the Georgia Pacific in that case That particular diamond lattice pattern in the trade dress was still considered functional and I think I'd like to and what I'd like to Go on. Excuse me. I Understand though that even with respect to the 749 patent These trademark applications didn't come in until It was on the edge of expiring correct, so One could wonder whether there was some link there certainly could have been but I think what's important to notice again, the The teaching in of the 308 patent again, this spends an entire nearly an entire column Disclosing not only disclosing the trade dress because what's clear is the 308 patent not only discloses the verbatim trade dress of the three two Six registration discloses the scalloped edge and discloses that that scalloped edge 46 is also beveled That is the exact configuration the fact that it may not be the identical fastener again Not only is that factually inaccurate which we've pointed out in our briefing, but again, it's also legally this two rivet versus five rivet point yes, your honor and There's a kind of a couple of layers to that first and foremost the three to six registration Despite flex goes repeated attempts to characterize it as a fiber of a fastener trade dress is not limited to five rivets If you look at I believe it's some Summary judgment exhibit nine. It's the three to six registration The only portion of that fastener that is claimed is that center scallop the rest of that isn't is in dotted lines And that's not a part of the trademark. There could be any number of rivets that also Utilize that particular center scallop It's also contrary to the teaching of the 308 patent Which is not limited to two rivets by its express face in column three where it says Belt fasteners using more than two rivets will fall within the purview of this invention So it's clear that not only is the three to six registration not limited to five rivets But the 308 patent is not limited to two rivets I'd like to also point out that this central advanced argument put forth by counsel has already been decided There's no need for this court to redefine what the central advances one of the arguments was the title of the 308 patent is in fact a rivet hinged fastener with teeth and that Thus the central advance of the 308 patent is a rivet hinge fastener with teeth If that were the case if that were in fact the case then Jay Franco Wouldn't have been able to look at its patent and decide that the utility patent there was strong evidence of functionality In Jay Franco this court dealt with a circular towel For tanning and it noted that the circular towel provided tanners the ability to rotate 360 degrees over the course of the day regardless of you know concerns about skins cancer and whatnot But the patent there was not directed solely to a circular towel It was the title of that patent was actually a towel that converts into a bat The idea being that you could turn that talent to a satchel tie it up and hold it on your back Even the net and independent claims much like the independent claims here didn't claim a circular towel It claimed a non-rectangular towel So the idea that the title or the independent claims somehow lend credence to this central advanced argument is ill founded This court has already decided that the same the same as the same is true in the Bodom case, which is a Case that's relied on by counsel the court specifically noted in in Bodom that yes Traffic's requires the disclosure in the utility patent in some significant way of the trade dress But it actually includes the parenthetical not necessarily in the claims There's no requirement that the particular central advanced be claimed in the in the patent or that it be titled in the patent It's merely if you have to look at the disclosure of the patent That's what traffic's teaches and that kind of leads somewhat into the second point Which is this some this imposed requirement of identity that somehow the three to six registration The 308 patent. I'm sorry is only strong evidence of functionality of the three to six if there's Identity between that the utility patent and the registration Traffic's is a perfect example why this argument is flawed in traffic's you dealt with utility patents on a dual spring Configuration and that particular instance it was a dual spring configuration for a rectangular sign They were located on opposite ends of that lower plane of the rectangular sign The trade dress that issue was related to a dual spring configuration that would attach to a single corner much like Triangle or perhaps a diamond-shaped sign and that was actually one of the arguments posited by the plaintiff there The plaintiff said well the utility patents only cover this particular cover Configuration of dual springs the trade dress is for this clearly different configuration of dual springs This is an evidence of functionality Supreme Court said that matters little that makes no difference What matters is what does the utility patent teach and what we have here is within the 308 patent? There's a clear disclosure of the trade dress in the three to six registration There is a description of the functional benefits of both beveling and scalloping that leading edge And there is the claiming of the scalloped edge in claim three You know in some your honor It's apparent that flex was attempting to bury Herculean tasks first They're attempting to rewrite Long-standing precedent from the Supreme Court in the Seventh Circuit on the significance of alternative designs as this court has repeatedly stated once functional under that in wood formulation Alternative designs do not negate that functionality. You can't bring a patented a Feature that falls within the province of the patents back into the realm of trademarks simply because there's other ways of doing The second the circuit second Herculean task flexible attempts is to really revise a number of documents all of which point to the same Thing essentially the declarations don't actually say what they say the 308 patent doesn't say what it says 20 years of advertising that all say the same thing don't say what they say But they all lead to the same refrain and the inescapable conclusion that the three to six registration is functional as a matter of law The district courts decision or the granting of summary judgment was less proper and should be affirmed. Thank you your honor Thank you Mr. Vincent Put aside this case for a second because I have to tell you what I'm really more most concerned about is is the law in The circuit and when do you have a question of fact on the issue of is there strong evidence of functionality? You know, there's a spectrum of the cases and on the far end I agree is Bowdoin where there was virtually nothing in the patents that were discussed and at the other extreme you have something like, Georgia Pacific where it says you have to use this particular shape Arlington specialties saying functionality that the bar for functionality is so low that it can often be decided as a matter of law Yes But that's only if the patent says you have to do it this way for it to work and that's the crux of Defining what is the central advance of the patent and that's the problem in this guy would be a high bar No, that would not that is not that is how you determine What is the central advance in order to achieve this? Parity between the patent and the essential feature of the trademark and that's what I've never defined is what if I'm sorry judge I don't mean to speak over you, but I only got two minutes left But my concern is that when you're when you're looking at the spectrum of cases in this area When do you have a question of fact that warrants summary judgment? When don't you have that question of fact? Where is the strong evidence? You've got a defined central advance and in all the cases where you have found that parity and it's strong evidence And the bar has been low our situations where the patent says you need to use this shape for it to work Okay, when you look at a case like McCarroll aids out of the fourth circuit They talked about shapes in there the different shapes of the pixel patterns or the little beads But they didn't have to be that pixel shape in order to work And that's why the court found there was a question of fact And so if you're you know, you're not going to be we're not going to be engaging in patent claim construction in these cases But you do need to make it clear to the bench in the bar When do you have a question of fact and when don't you and that all keys off of where is this? What is the central advance and in this case? You can talk to mr Smolzinski's blue in the face about the fact that it says you scallop the edge There is nothing in the patent that says you have to scallop the edge in this shape for it to work this way And that's the crux of this case. That's the key That's why this case is like McGarrett's where they said pixel pattern But you could use hexagons or any others doesn't have to be any particular shape to work Versus Georgia Pacific where all five patents said you got to have this diamond-shaped lattice pattern to get bulkiness non-nesting and softer toilet tissue okay, and that's to me the most important thing about this case is the law in the circuit and Defining the spectrum, you know at the broad end where you got traffics McCarroll aids Jayfranco clear as a bell that if it isn't done this way, it won't work Our patent doesn't say you have to do this shape for it to work You just have to reduce the plate material you cut it I just I'm gonna interject and say Supreme Court doesn't say that you have to show that this is the only way the patent will work. That's a Hurdle for you. I agree, but they do use that term central advance And that's what we need to know what that means if you're gonna say central advance. Okay essential feature strong evidence. Thank you Thank you, thanks to both counsel we'll take the case under advisement